**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable William J. Martínez**

Civil Action No. 15-cv-01062-WJM

JEREMIAH J. KENNEDY,

    Applicant,

v.

COLORADO DEPARTMENT OF CORRECTIONS, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

**ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS**

This matter is before the Court on the second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) (the "Second Amended Application") filed *pro se* by Applicant Jeremiah J. Kennedy. Respondents have filed an Answer (ECF No. 31) ("the Answer") to the Second Amended Application. Mr. Kennedy has not filed a traverse despite being given an opportunity to do so. After reviewing the record, including the Second Amended Application, the Answer, and the state court record, the Court FINDS and CONCLUDES that the Second Amended Application should be denied and the case dismissed with prejudice.

**I. BACKGROUND**

Mr. Kennedy is challenging the validity of his conviction and sentence in Arapahoe County District Court case number 07CR2692. He was tried jointly with a co-defendant and he was convicted of vehicular eluding, accessory to aggravated robbery, and four habitual criminal counts. The Colorado Court of Appeals on direct appeal

described the relevant factual background as follows:

> The victim parked his car and started walking to his motel room. A man approached him in the parking lot and asked if he had a lighter. When the victim pulled a lighter put of his pocket, the man said, "[a]nd your wallet" and pulled out a gun. The victim gave the robber $300. The robber walked away quickly and got into the passenger side of a blue truck. The truck sped off. The victim called 911.
>
> After the police arrived, the victim and an officer drove to look at an abandoned vehicle nearby, which the victim identified as the truck the robber fled in. The officer drove the victim to another location, where the victim identified a suspect in custody, codefendant, as the robber.
>
> In the meantime, a security guard who was working at a nearby shopping center heard sirens from the police cars in the area. As he scanned the perimeter of the shopping center, he saw a truck drive through a red traffic light at a high rate of speed. The truck passed him within a distance of approximately 15-20 feet. The guard observed the driver, but could not see the passenger clearly because of the lighting in the area. The guard contacted the police officers, who were also in pursuit of the truck, and helped them search the area. A police officer drove the guard to the parking lot of a high school where the police had taken defendant into custody. This area was near the location of the abandoned truck that the victim identified. The guard identified defendant as the driver of the truck he had seen speeding through the shopping center.
>
> Defendant was charged with aggravated robbery, conspiracy to commit aggravated robbery, first degree aggravated motor vehicle theft, vehicular eluding, theft, violent crime with a deadly weapon, and four habitual criminal counts.
>
> Defendant and codefendant were tried in a joint jury trial. Defendant was convicted of vehicular eluding, accessory to aggravated robbery, and four habitual criminal counts. The trial court sentenced him to 12 years in the Department of Corrections.

*People v. Kennedy*, No. 10CA1383, slip op. at 1-2 (Colo. App. Sept. 5, 2013)

(unpublished) (ECF No. 13-2 at 2-3).  The judgment of conviction was affirmed on direct appeal.  *See id.*  On May 19, 2014, the Colorado Supreme Court denied Mr. Kennedy's petition for writ of certiorari on direct appeal.  (*See* ECF No. 13-6.)

The instant action was commenced on May 20, 2015, and the Court has determined that, construing the Second Amended Application liberally, Mr. Kennedy is asserting five claims for relief.  He specifically contends the trial court erred in denying his motion to sever his case from that of his co-defendant, which precluded him from introducing exculpatory evidence (claim one); the trial court erred in failing to suppress testimony regarding an out-of-court identification that was unduly prejudicial (claim two); the trial court erred in denying a motion for mistrial based on witness testimony that violated his Fifth Amendment rights (claim three); there was insufficient evidence to convict him of vehicular eluding and accessory to aggravated robbery (claim four); and the trial court erred in failing to give a requested jury instruction regarding eyewitness identifications (claim five).  The Court previously entered an Order to Dismiss in Part (ECF No. 24) dismissing claims one and five because those claims are unexhausted and procedurally barred.  Therefore, only claims two, three, and four in the Second Amended Application remain to be considered on the merits.

## II.  STANDARDS OF REVIEW

The Court must construe the Second Amended Application liberally because Mr. Kennedy is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Mr. Kennedy bears the burden of proof under § 2254(d). *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

The Court reviews claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question the Court must answer under § 2254(d)(1) is whether Mr. Kennedy seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of the Court's inquiry under § 2254(d)(1). *See id*. at 1018.

4

If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.

*House*, 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. Furthermore,

> [E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general

5

> the rule, the more leeway courts have in reaching outcomes
> in case-by-case determinations. [I]t is not an unreasonable
> application of clearly established Federal law for a state
> court to decline to apply a specific legal rule that has not
> been squarely established by [the Supreme] Court.

*Harrington v. Richter*, 562 U.S. 86, 101 (2011) (internal quotation marks and citation omitted). In conducting this analysis, the Court "must determine what arguments or theories supported or . . . could have supported[] the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id*. at 102. In addition, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180-81 (2011).

Under this standard, "only the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also Richter*, 562 U.S. at 102 (stating "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal
> court, a state prisoner must show that the state court's ruling
> on the claim being presented in federal court was so lacking
> in justification that there was an error well understood and
> comprehended in existing law beyond any possibility for
> fairminded disagreement.

*Richter*, 562 U.S. at 103.

The Court reviews claims of factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows the Court to grant a writ of habeas corpus only if the relevant state court decision

was based on an unreasonable determination of the facts in light of the evidence presented to the state court. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and Mr. Kennedy bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court's analysis is not complete "[e]ven if the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006). "Unless the error is a structural defect in the trial that defies harmless-error analysis, [the Court] must apply the harmless error standard of *Brecht v. Abrahamson*, 507 U.S. 619 (1993) . . . ." *Id.*; *see also Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (providing that a federal court must conduct harmless error analysis under *Brecht* anytime it finds constitutional error in a state court proceeding regardless of whether the state court found error or conducted harmless error review). Under *Brecht*, a constitutional error does not warrant habeas relief unless the Court concludes it "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. "A 'substantial and injurious effect' exists when the court finds itself in 'grave doubt' about the effect of the error on the jury's verdict." *Bland*, 459 F.3d at 1009 (citing *O'Neal v. McAninch*, 513 U.S. 432, 435 (1995)). "Grave doubt" exists when "the matter is so evenly balanced that [the Court is] in virtual equipoise as to the harmlessness of the error." *O'Neal*, 513 U.S. at 435. The Court makes this harmless error determination based upon a review of the entire state court

7

record. *See Herrera v. Lemaster*, 225 F.3d 1176, 1179 (10th Cir. 2000).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, the Court must review the claim *de novo* and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

### III. MERITS OF REMAINING CLAIMS

**A. Claim Two**

Mr. Kennedy contends in claim two that the trial court erred in failing to suppress testimony regarding an out-of-court identification that was unduly prejudicial. The out-of-court identification at issue was made by the security guard who observed Mr. Kennedy driving the getaway vehicle. According to Mr. Kennedy, the security guard's opportunity to observe the driver was so fleeting that the subsequent field identification more than one hour later, in which Mr. Kennedy was the only suspect, was shown handcuffed, and was shown with a flashlight illuminating his face was impermissibly suggestive and inherently prejudicial.

In this context, "due process concerns arise only when law enforcement officers use an identification procedure that is both suggestive and unnecessary." *Perry v. New Hampshire*, 132 S. Ct. 716, 724 (2012) (summarizing relevant standards clearly established in prior Supreme Court decisions). Furthermore, even if law enforcement officers use a suggestive and unnecessary identification procedure, the resulting identification need not be suppressed unless, based on the totality of the circumstances, "improper police conduct created a substantial likelihood of

misidentification." *Id.* at 724-25 (internal quotation marks omitted). The Supreme Court has identified the following five factors that courts must consider to determine whether a particular identification procedure created a substantial likelihood of misidentification:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199-200 (1972).

The Colorado Court of Appeals on direct appeal applied this clearly established law and reasoned as follows in rejecting the claim:

> Defendant argues that the security guard's out-of-court identification of him should have been suppressed because it was unreliable. We disagree.
>
> A defendant is denied due process when the jury hears evidence of a witness's unreliable identification of the defendant as the perpetrator. *See People v. Borghesi*, 66 P.3d 93, 103 (Colo. 2003). We review the constitutionality of a pretrial identification procedure as a mixed question of law and fact. *Bernal v. People*, 44 P.3d 184, 190 (Colo. 2002). We defer to the trial court's findings of fact, but "we may afford different weight to those facts and reach a different conclusion in light of the legal standard." *Borghesi*, 66 P.3d at 104.
>
> We consider the totality of the evidence to determine whether a particular identification procedure was so suggestive as to render unreliable any resulting identification. *See People v. Weller*, 679 P.2d 1077, 1083 (Colo. 1984); *People v. Walker*, 666 P.2d 113, 119 (Colo. 1983). The question is whether the identification was unreliable because the pretrial procedure was unduly and irreparably suggestive, or whether the identification was reliable (despite any suggestive procedures) because it was based on the witness's independent observations of the defendant during the commission of the crime. *See Walker*,

666 P.2d at 119; *People v. Mascarenas*, 666 P.2d 101, 109 (Colo. 1983). Factors to consider in this inquiry include "(1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness'[s] degree of attention; (3) the accuracy of the prior description of the criminal; (4) the level of certainty demonstrated at the confrontation; and (5) the time between the crime and the confrontation." *Weller*, 679 P.2d at 1083 (citing *People v. Smith*, 620 P.2d 232, 238 (Colo. 1980)).

Here, defendant moved to suppress all evidence resulting from the security guard's identification of him in a one-on-one show-up as the driver of the getaway truck from the robbery. While one-on-one show-ups are viewed with disfavor, they are not per se violations of due process. *Mascarenas*, 666 P.2d at 109. A one-on-one show-up, or witness identification at the scene of a crime or a suspect's detention, may be justified "where immediate identification would facilitate an ongoing criminal investigation" and the police must determine whether they need to continue searching for a suspect. *Id.*

After hearing argument on defendant's motion and testimony from the guard at a pretrial hearing, the trial court made the following factual findings: (1) When the guard saw the truck at the mall parking lot, the area was "fairly well-lit with streetlights;" (2) The guard could see partially inside the truck, and he saw the occupants of the truck for one or two seconds; (3) He saw the driver's face and profile from approximately five to 15 yards away; (4) The guard described the driver as a white male in his late 20s to early 30s with either no hair or short hair, and either no facial hair or short facial hair; and (5) The guard believed the driver may have had a tattoo on the left side of his neck.

Upon arrival at the location where defendant was detained, the police officer instructed the guard to answer "yes or no" as to whether he could identify defendant. The officer told the guard to make an identification only if he was 100 percent sure. The officer drove at a speed of roughly five miles per hour within four or five feet of the suspect, who was seated in a car. [footnote 1] The officer illuminated defendant's face with a flashlight, and the guard had roughly 10 to 25 seconds to observe defendant. Streetlights also lit the area. The guard identified defendant as the driver of the

truck he had seen earlier, and the guard was 90 to 95 percent sure of the identification. The identification occurred approximately one hour to one-and-a-half hours after the guard initially saw the truck.

> [footnote 1: The testimony differed on whether defendant was inside or outside the car during the identification, but the trial court found that he was inside the car.]

The trial court found that the police needed to conduct the show-up in order to determine if defendant, who had been apprehended, was actually involved in the robbery.

Assuming, without deciding, that the identification procedure here was suggestive, we do not believe it resulted in a "very substantial likelihood of misidentification," considering the totality of the circumstances. *See Borghesi*, 66 P.3d at 104. We agree with the trial court that here, as in *Mascarenas*, the police needed to make an immediate identification of defendant to determine whether they had apprehended an innocent party or the correct suspect in a reported armed robbery. *See* 666 P.2d at 109.

Further, the guard had adequate opportunity to observe the driver of the get-away truck, who was driving through a well-lit area approximately five to 15 yards away from the guard. The guard testified that he noticed the high speed of the truck, heard police sirens, and focused his attention on the vehicle and the driver because he was trying to take in as much information as he could. His description of defendant was accurate; while defendant did not have a tattoo on his neck, the guard merely said he "may" have seen a tattoo. The guard had a high degree of certainty when he identified defendant and was instructed by police only to make an identification if he was certain. The time elapsed between the guard's initial encounter with the driver and the identification, while possibly over an hour, was not excessively long. Considering the totality of the circumstances, we conclude the trial court did not err in admitting the guard's identification testimony. Even if the identification procedure employed was suggestive, the guard's identification of defendant was based on the guard's independent observations of defendant while fleeing the

11

>   scene of the robbery.  *See Walker*, 666 P.2d at 120 (in
>   evaluating circumstances surrounding one-on-one show-up,
>   appellate court should defer to trial court's superior ability to
>   weigh the evidence and credibility of witnesses, especially
>   where evidence is conflicting); *People v. Young*, 923 P.2d
>   145, 151 (Colo. App. 1995) (upholding admissibility of
>   identification where witness identified defendant after driving
>   by him in a police car).

(ECF No. 13-2 at 7-12.)

Mr. Kennedy does not contend that the decision of the Colorado Court of Appeals is contrary to clearly established federal law.  In other words, he does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case.  *See House*, 527 F.3d at 1018.

Mr. Kennedy also fails to demonstrate the state court's ruling was based on an unreasonable determination of the facts.  He does not identify any clear and convincing evidence to rebut the presumption of correctness that attaches to the state court's factual findings.  Although there was contradictory testimony regarding whether Mr. Kennedy was seated in a police car or standing next to the police car when the security guard identified him as the driver, the trial court's resolution of the disputed testimony was not unreasonable.

Finally, Mr. Kennedy fails to demonstrate the state court's ruling is an unreasonable application of clearly established federal law.  The state court applied the five relevant factor identified by the Supreme Court and reasonably concluded there was not a substantial likelihood of misidentification.  Ultimately, Mr. Kennedy fails to demonstrate the state court's determination "was so lacking in justification that there

was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103. Therefore, Mr. Kennedy is not entitled to relief with respect to claim two.

## B. Claim Three

Mr. Kennedy contends in claim three that the trial court erred in denying a motion for mistrial based on witness testimony that violated his Fifth Amendment rights. According to Mr. Kennedy, a law enforcement witness repeatedly testified that photographs of Mr. Kennedy introduced at trial were taken in the interview room, which left the jury to speculate as to what Mr. Kennedy said to the officer in the interview room.

The Colorado Court of Appeals reasoned as follows in rejecting this claim for relief:

> Defendant contends the trial court erred when it denied his motion for a mistrial based on a police officer's testimony regarding defendant's earlier detention in an "interview room." According to defendant, this testimony "raise[d] the specter of evidence being withheld from the jury" because it suggested that he divulged information in an interview that the jury did not hear. We are not persuaded.
>
> Because a mistrial is the most drastic of remedies, it is warranted only where the prejudice to the defendant is too substantial to be remedied by other means. *E.g.*, *People v. Collins*, 730 P.2d 293, 303 (Colo. 1986). When a defendant claims that a trial court's denial of his or her motion for a mistrial constitutes a violation of his or her constitutional rights, we must first determine whether an error occurred based on the totality of the circumstances. *People v. Santana*, 255 P.3d 1126, 1130 (Colo. 2011). If we find no constitutional violation, the decision to deny the mistrial is reviewed for abuse of discretion and will not be disturbed absent a clear showing of abuse of discretion and prejudice to the defendant. *Id.*

Here, the prosecutor asked the officer if, in the course of his investigation, he "[met] with each suspect." The officer responded that he did. Defense counsel objected to the line of questioning because it implicated defendant's Fifth Amendment right to remain silent upon meeting with the officers – despite the fact that defendant here did not remain silent (instead, he gave statements to police). The prosecutor argued that he was trying to introduce a photo exhibit depicting defendant as he appeared during the meeting with police at headquarters on the night he was arrested. The trial court instructed the prosecutor to inquire "did you see him that night, does this look like he looked that night, period." The court further warned the prosecutor not to "get into where [defendant] is sitting and what is going on because the jury is left to think, oh, well, an interview is about to take place and that infringes on this man's Fifth Amendment right."

When the prosecutor showed the officer the exhibit and asked him what he recognized in the photo, the officer testified that the photo depicted defendant in "our interview room." Defense counsel immediately objected. The prosecutor noted that he had informed the officer not to discuss any interviews with defendant. The prosecutor noted that he should have specifically admonished the officer not to mention the term "interview room," or in any way address whether defendant had been interviewed. The trial court agreed, stating:

> [e]verytime you say interview room, you are setting up for the jury to think you will be talking about the interview and that's an absolute violation of these defendants' Fifth Amendment right to remain silent. Do not say that again. . . . So no more discussion about an opportunity to speak with these guys, interview, interview room. No more, no more of that.

Defendant moved for a mistrial based on the cumulative effect on the jury of testimony that defendant was in some sort of interview room, and the implication that evidence of the interview was being withheld from the jury. After hearing argument from counsel, the trial court noted that defendant made some self-serving statements at the police station that the People did not intend to introduce.

>The court suggested it would be an adequate remedy to allow defendant to introduce the statements he gave the police that evening if he wished to do so. Defendant declined on the ground that the interview included a mix of inculpatory and exculpatory statements.
>
>The trial court ruled that a mistrial was a drastic remedy and it did not belief that level had been reached. The court concluded that the photos the prosecution wished to introduce did not appear to be overly prejudicial, and there did not seem to be a cumulative effect from comments regarding defendant's presence in the interview room. The trial court offered to issue a curative instruction regarding defendant's right to remain silent. Defendant declined the curative instruction on the ground that it could draw more attention to the issue of the interview.
>
>Ultimately, the court permitted defendant to cross-examine the officer regarding defendant's exculpatory statements (in the interview room) explaining why he was out that night and the officer's description of defendant's confusion about being in custody. The trial court prohibited the prosecutor from inquiring further into the rest of the interview; specifically, the court prevented the prosecutor from asking about defendant's potentially inculpatory statements or his appearance in the interview room.
>
>The officer's reference to defendant's presence in an interview room was brief. While the prosecutor's questioning could have been more sharply honed to avoid any reference to an interview, both the prosecutor and the officer heeded the trial court's admonishment to avoid any further reference after defendant's objection. Also, defendant declined a curative instruction. *Cf. People v. Shreck*, 107 P.3d 1048, 1060 (Colo. App. 2004) (no abuse of discretion in denial of mistrial where defendant declined the trial court's offer of a curative instruction regarding the prosecutor's brief reference to defendant's uncharged crimes, which was not repeated). Further, the trial court crafted a curative remedy permitting defendant to question the officer regarding defendant's exculpatory statements about his whereabouts on the evening of the robbery, and prohibiting the prosecutor from questioning the officer regarding inculpatory details the officer observed during the interview.

> In short, the jury heard evidence of defendant's statements made in the interview room, and those statements were exculpatory. Thus, contrary to defendant's contention, this questioning did not raise the specter of evidence being withheld from the jury. Moreover, the officer's testimony, considered in its entirety, was not a comment on defendant's alleged *silence* in the interview room. Rather, the testimony revealed defendant's statements made in the interview room, which (as far as the jury heard) were exculpatory. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion for a mistrial.

(ECF No. 13-2 at 12-17.)

Mr. Kennedy does not contend that the state court's adjudication of claim three resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2254(d)(2).

He also fails to demonstrate that the state court's adjudication of claim three was contrary to, or an unreasonable application of, clearly established federal law under § 2254(d)(1). In fact, Mr. Kennedy does not identify any clearly established federal law implicated by the facts alleged in support of claim three. As noted above, "clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*" and the absence of any clearly established federal law ends the Court's inquiry under § 2254(d)(1). *House*, 527 F.3d at 1016, 1018.

In any event, even assuming the existence of a constitutional error under the deferential standards of § 2254(d), the Court is convinced, based on a review of the entire state court record, that Mr. Kennedy cannot demonstrate the alleged error was prejudicial under *Brecht*. Most importantly, and as noted by the Colorado Court of

Appeals in the excerpt quoted above, the trial court crafted a curative remedy that allowed Mr. Kennedy to present his exculpatory statements to the jury without mention of any inculpatory statements. Under these circumstances, Mr. Kennedy cannot demonstrate that the alleged error "had substantial and injurious effect" on the jury's verdict. *Brecht*, 507 U.S. at 637. Therefore, Mr. Kennedy is not entitled to relief with respect to claim three.

## C. Claim Four

Mr. Kennedy contends in claim four that there was insufficient evidence to convict him of vehicular eluding and accessory to aggravated robbery. According to Mr. Kennedy, the primary evidence linking him to the crimes in question, the security guard's fleeting glimpse of the driver of a speeding truck, was insufficient to establish his guilt beyond a reasonable doubt in light of other evidence that his co-defendant was the actual robber, his co-defendant was apprehended with the stolen money and a handgun, and his co-defendant made statements that he committed the robbery by himself.

The proper standard for sufficiency of the evidence, which was clearly established when Mr. Kennedy was convicted, is set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). In *Jackson* the Supreme Court held that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.*

"Under *Jackson*, federal courts must look to state law for 'the substantive elements of the criminal offense,' but the minimum amount of evidence that the Due Process Clause requires to prove the offense is purely a matter of federal law." *Coleman v. Johnson*, 132 S. Ct. 2060, 2064 (2012) (per curiam) (quoting *Jackson*, 443 U.S. at 324, n.16). To the extent an insufficient evidence claim involves an interpretation of state law, the state court's interpretation "binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (per curiam). "Sufficiency of the evidence is a mixed question of law and fact." *Maynard*, 468 F.3d at 673. The Court must apply both § 2254(d)(1) and (d)(2) and "ask whether the facts are correct and whether the law was properly applied to the facts." *Id.*

The Colorado Court of Appeals applied this clearly established federal law in rejecting Mr. Kennedy's insufficient evidence claim.

> When reviewing a challenge for sufficiency of the evidence, we must determine whether the evidence presented, viewed in the light most favorable to the prosecution, was substantial and sufficient to support the defendant's guilt beyond a reasonable doubt. *Dempsey v. People*, 117 P.3d 800, 807 (Colo. 2005). We review such a claim de novo. *Id.*
>
> "A person is an accessory to a crime if, with intent to hinder, delay, or prevent the discovery, detection, apprehension, prosecution, conviction, or punishment of another for the commission of a crime, he renders assistance to such person." § 18-8-105(1), C.R.S. 2012. Rendering assistance includes, as relevant here, harboring or concealing another who has committed a crime, or providing such a person with transportation. § 18-8-105(2)(a), (c), C.R.S. 2012.
>
> Here, the evidence showed that the victim saw codefendant get into the passenger side of a blue truck. The truck then sped away. The security guard identified

>    defendant as the driver of a blue truck, matching the description given by the victim, speeding through the parking lot of a nearby shopping center. Further, DNA evidence was found on the truck's steering wheel. Testing revealed that, while 99.995 percent of the population could be excluded as contributors of the DNA, defendant could not be excluded as a contributor; thus, it was extremely likely that defendant's DNA was on the steering wheel of the truck. Police found defendant hiding behind a tree near the abandoned blue truck.
>
>    Accordingly, considering all of the evidence in the light most favorable to the prosecution, we conclude that substantial and sufficient evidence was presented to show that defendant provided codefendant with transportation and was an accessory to robbery.

(Docket No. 13-2 at 18-19.)

Mr. Kennedy does not contend that the decision of the Colorado Court of Appeals is contrary to *Jackson*. He does not cite any contradictory governing law set forth in Supreme Court cases or any materially indistinguishable Supreme Court decision that would compel a different result in his case. *See House*, 527 F.3d at 1018.

Mr. Kennedy also fails to demonstrate the state court's ruling was based on an unreasonable determination of the facts or is an unreasonable application of *Jackson*. He does not present any clear and convincing evidence to rebut the state court's factual findings as set forth in the excerpt quoted above and he fails to demonstrate the state court ruling "was so insupportable as to fall below the threshold of bare rationality" required under *Jackson*. *Coleman*, 132 S. Ct. at 2065. Mr. Kennedy's attempt to downplay the significance of the witness identification testimony is not persuasive and he completely ignores the DNA evidence found on the steering wheel of the getaway vehicle in challenging the sufficiency of the evidence supporting his convictions.

Ultimately, the Court's review of the state court record confirms that the state court's rejection of claim four "was [not] so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.  Therefore, Mr. Kennedy is not entitled to relief with respect to claim four.

## V.  CONCLUSION

In summary, the Court finds that Mr. Kennedy is not entitled to relief on any of his remaining claims in the Second Amended Application.  Accordingly, it is

**ORDERED** that the second amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 9) is denied and this case is dismissed with prejudice.  It is further

**ORDERED** that there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).  It is further

**ORDERED** party shall bear their own attorney's fees and costs.

Dated this 29th day of February, 2016.

BY THE COURT:

_____

William J. Martinez
United States District Judge